# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STEVEN POLING # 354-705**<br><br>Plaintiff<br>v.<br><br>**Gary D. Maynard,** *et al.*<br><br>Defendants | **Civil Action No.: RWT-12-cv454** |

## MOTION FOR SUMMARY JUDGMENT

Defendants Corizon, Inc., Noor Siddiqui, M.D., and Colin Ottey, M.D. ("Defendants"), by undersigned counsel, move for summary judgment pursuant to Fed. R. Civ. P. 56, and state:

1. There is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law.

2. Plaintiff has failed to meet his burden of proof for injunctive relief.

2. The grounds for this Motion are stated in the attached Memorandum of Law, which is incorporated by reference as if fully set out herein.

**WHEREFORE**, Defendants Corizon, Inc., Noor Siddiqui, M.D., and Colin Ottey, M.D. request that the Court grant their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, and order other and further relief as this cause may require.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

BY: <u>/s/ Jennifer E. Cameron</u>
Jennifer E. Cameron, #27490
600 Baltimore Avenue, Suite 305
Towson, MD 21204
(410) 339-6880
*Attorneys for Defendants Corizon, Inc.,*
*Noor Siddiqui, M.D., and Colin Ottey, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of June, 2015, a copy of the foregoing Motion for Summary Judgment was electronically filed and served on all parties in the case CM/ECF.

| | |
|---|---|
| Gregory K. Wells, Esq.<br>Shadoan Michael and Wells LLP<br>108 Park Ave<br>Rockville, MD 20850 | Gina Marie Smith, Esq.<br>Meyers Rodbell and Rosenbaum PA<br>6801 Kenilworth Ave Ste 400<br>Riverdale, MD 20737 |
| Bradford Roegge, Esq.<br>Gleason, Flynn, Emig & Fogleman<br>11 North Washington Street, Suite 400<br>Rockville, MD 20850 | |

<u>/s/ Jennifer E. Cameron</u>
Jennifer E. Cameron

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**STEVEN POLING # 354-705**

Plaintiff
v.

**Gary D. Maynard,** *et al.*

Defendants

Civil Action No.: RWT-12-cv454

## MEMORANDUM OF LAW

Defendants Corizon, Inc., Noor Siddiqui, M.D. and Colin Ottey, M.D. ("Defendants") submit this Memorandum of Law in Support of the Motion for Summary Judgment.

### Statement of Facts

Plaintiff Steven Poling ("Plaintiff"), an inmate, alleges that Defendants failed to obtain specialty care and imaging studies for him that delayed diagnosis and treatment of a rare benign tumor at the base of his skull. Plaintiff had surgery in March 2012 to remove the tumor, and his post-operative condition is stable. Plaintiff brings suit for violations of his constitutional rights, medical negligence and also seeks a permanent injunction regarding the medical treatment at Maryland correctional facilities.

Corizon, Inc. provided primary medical services on-site at State of Maryland correctional facilities at the times relevant to this occurrence. Drs. Siddiqui and Ottey were agents of Corizon and provided on-site care to Plaintiff at Maryland Correctional Institution - Hagerstown (MCI-H). Any specialty care recommended by Corizon clinicians was subject to an approval process called "Utilization Management" provided by Co-defendant Wexford Health Sources, and as required by contract with the State of Maryland. Exhibit 1, Deposition of Dr.

Dr. Robert Smith, p. 45-46; p. 60-61. Robert Smith, M.D., Wexford's Medical Director, described utilization management:

> a primary care provider sees a patient and may request for a specialty referral, a diagnostic testing or usually things of that nature. And what is most commonly done, is that a form is completed making a formal request for those services and is forwarded to -- to a office and whereupon it's reviewed by the utilization staff. That's how it's most commonly done.

Exhibit 1, p.18, l. 2-11. Dr. Smith conducted the utilization review for Wexford. Exhibit 1, p. 47, l. 19-22; p. 55, l. 10-13.

The process requires completion of an Off-Site Consultation form by the requesting physician, as well as a collegial review with Wexford. Exhibit 2, Referral Request/Collegial Review, UM-006. Collegial review, a weekly conference call, is a dialogue discussing a patient's case with the provider and the utilization review decision maker. Exhibit 1, p. 52-53. Dr. Smith would make a decision at the conclusion of the collegial review or instruct the presenter to bring the tequest to the next session. Exhibit 1, p. 85, l. 1-17.

If the off-site care is approved, the service is scheduled. Exhibit 2. If the off-site care is not approved, an appeal process is available. Exhibit 3, Correctional Site Appeal Process, UM-010. The first level of appeal is another discussion with Dr. Smith. Exhibit 1, p. 132, l. 3-16. The on-site physicians made no formal appeal of Wexford's decisions with respect to Plaintiff, however, requests for off-site specialty care and imaging care were made repeatedly during 2011 after non-approval by Wexford. The events are described in detail below and in the attached medical records (Exhibit 4).

Plaintiff was transferred to the Maryland Correctional Institution - Hagerstown (MCI-H) in January 2011. Exhibit 4, Wexford 000082. Upon transfer, Plaintff was examined by Dr. Ottey who recorded a three history of headaches that developed after being kicked in the back of the

head.  Plaintiff reported that motrin helped with the head pain. Dr. Ottey referred Plaintiff to the Chronic Care Clinic for his neurological symptoms.  Exhibit 4, Wexford 000092-95.

Dr. Oteyza examined Plaintiff in the Chronic Care Clinic on April 25, 2011.  Plaintiff complained of pain radiating down his left arm and numbness in his hand.  Dr. Oteyza observed a lump he believed to be a lipoma[1] on Plaintiff's neck.  Dr. Oteyza prepared an Off-Site Consultation Request for orthopedic surgery and possible biopsy of the lump.  Exhibit 4, Wexford 000105-108.  Wexford denied the Consultation Request.  Exhibit 4, Wexford 000109-110.

Plaintiff was seen again in the Chronic Care Clinic on May 27, 2011 and June 30, 2011. Exhibit 4, Wexford 000109-110; Wexford 000114-115.  Emily Staub, P.A. examined Plaintiff on June 30, 2011.  She recorded his complaints of neck pain radiating into his left arm and wrote, "May consider neuro consult or pain management consult at next visit if no improvement."  She also prescribed Neurontin for Plaintiff's pain.  *Id*.

On July 25, 2011, Dr. Oteyza examined Plaintiff, noting complaints of neck pain radiating down Plaintiff's left arm. Exhibit 4, Wexford 00119-122.  He agreed with P.A. Staub that an orthopedic or neurological consultation was reasonable, and prepare an Off-Site Consultation Request seeking either an MRI or orthopedic consult.  *Id*.

P.A. Staub examined Plaintiff again on August 18, 2011.  Plaintiff complained of pain radiating down his left arm with numbness, tingling and decreased grip strength.  She noted that he was unable to fan fingers 3-5 of his left hand and decreased sensation on the left compared to the right.  She prepared an Off-Site Consultation Request for a neurology evaluation.  This

---

[1] A lipoma is a slow-growing, fatty lump that's most often situated between your skin and the underlying muscle layer. A lipoma, which feels doughy and usually isn't tender, moves readily with slight finger pressure. Lipomas are usually detected in middle age. Some people have more than one lipoma.  A lipoma isn't cancer and usually is harmless.  http://www.mayoclinic.org/diseases-conditions/lipoma/basics/definition/con-20024646

Request was discussed in collegial review. The neurology evaluation was declined in favor of physical therapy, which was provided on-site at MCI-H. Exhibit 4, Wexford 000125-134, Wexford 000136.

P.A. Staub followed up with Plaintiff on September 27, 2011. Plaintiff was still receiving physical therapy at this visit. She noted his complaints, and prescribed indomethacin for his pain. Exhibit 4, Wexford 000144-145.

Plaintiff was seen by a nurse on October 26, 2011 for new complaints of neck pain, bilateral muscle weakness, rash, loss of muscle control in his hands, and tingling in his toes. He was referred to the physician. Exhibit 4, Wexford 000155-157. P.A. Staub examined him on November 1, 2011, and noted his new complaints of trouble walking at times and headaches. She prepared an Off-Site Consultation Request form for consultation with a Physiatrist. [2] The Request was present in collegial and was approved by Dr. Smith. Exhibit 4, Wexford 000158, 000160-162.

On November 23, 2011, Noor Siddiqui, M.D. examined Plaintiff in his regularly scheduled Cardiac Chronic Care Clinic. He complained of pain all over his body and that he had been told he would be seen by pain management. Dr. Siddiqui prescribed Nortriptyline for his pain, and considered a referral to another Corizon physician for pain management. Exhibit 4, Wexford 000171-172.

---

[2] Physiatrists, or rehabilitation physicians, are nerve, muscle, and bone experts who treat injuries or illnesses that affect how you move. Rehabilitation physicians are medical doctors who have completed training in the medical specialty of physical medicine and rehabilitation (PM&R). Specifically, rehabilitation physicians: Diagnose and treat pain; Restore maximum function lost through injury, illness or disabling conditions; Treat the whole person, not just the problem area; Lead a team of medical professionals; Provide non-surgical treatments; Explain your medical problems and treatment/prevention plan. The job of a rehabilitation physician is to treat any disability resulting from disease or injury, from sore shoulders to spinal cord injuries. The focus is on the development of a comprehensive program for putting the pieces of a person's life back together after injury or disease – without surgery. American Academy of Physical Medicine and Rehabilitation, https://www.aapmr.org/patients/aboutpmr/Pages/physiatrist.aspx

Plaintiff saw Dr. Shelton at Bon Secours for his pain management consultation on December 5, 2011Dr. Shelton found full cervical range of motion on extension and flexion, muscle strength at 5/5 excepting intrinsic hand muscles, no muscle atrophy, and some tenderness at C3-4. He assessed Plaintiff as having cervical radiculitis and paresthesias. Dr. Shelton prescribed Neurontin and Baclofen for pain, physical therapy with cervical traction, and cervical epidural if there was no improvement with conservative treatment. . Exhibit 4, Wexford 000921-922. Dr. Shelton also considered an MRI if those treatments were not helpful.

P.A. Staub reviewed Dr. Shelton's note on December 7, 2011. She wrote that Neurontin, Baclofen, and physical therapy had been done without improvement. She prepared an Off-Site Consultation Request Form for a cervical MRI and epidural steroid injection. The Request was declined in favor of physical therapy with traction. Exhibit 4, Wexford 000176-181.

P.A. Staub examined Plaintiff on December 20, 2011. His rash had resolved. She continued his pain medications and referred him to pain management. Exhibit 4, Wexford 000184-185.

Dr. Ottey saw Plaintiff for abdominal discomfort, constipation and hematochezia[3] on January 15, 2012. After administering a laxative, Dr. Ottey sent Plaintiff to the emergency room at Meritus Medical Center. Exhibit 4, Wexford 000189-196. While at Meritus, Plaintiff underwent a CT scan of the head as indicated by his left arm weakness. No acute abnormality was identified on the CT. Exhibit 4, Wexford 000941.

P.A. Staub examined Plaintiff in a regular chronic care visit on January 17, 2012. She noted that Plaintiff would have physical therapy with traction at MCI-H. She referred Plaintiff to the dispensary for tachycardia. Exhibit 4, Wexford 000197-198. Dr. Siddiqui performed an

---

[3] Bright red blood in the stool, usually from the lower gastrointestinal tract -- the colon or rectum -- or from hemorrhoids. *http://www.medicinenet.com/script/main/art.asp?articlekey=18453*

EKG, noted sinus tachycardia, and administered a dose of Lopressor. Exhibit 4, Wexford 000200-202.

Plaintiff was seen by P.A. STaub on February 9, 2012 in the Chronic Care Clinic. She reported that Plaintiff was not taking his medications and observed him to be anxious. She requested a psychiatric consultation. Exhibit 4, Wexford 000214-217.

Plaintiff was examined by Dr. Didden at MCI-H on February 14, 2012. He documented Plaintiff's pain complaints, difficulty walking, paresthesias, constipation and urinary hesitancy. He recommended an immediate MRI of the brain "because presence of demyelinating lesions would significantly alter patient's treatment plan." He prepared an Off-Site Consultation Request for MRI of the brain. On February 15, 2012, The Request was deferred until after examination by Dr. Ali, and another presentation at collegial. Exhibit 4, Wexford 000219-223. The MRI was approved by Wexford on February 22, 2012. Exhibit 4, Wexford 000226.

On February 25, 2012, Plaintiff was admitted to the MCI-H Infirmary for dyspnea and ambulatory dysfunction. Exhibit 4, Wexford 000233-235. On February 27, 2012, Plaintiff was transferred to Bon Secours Hospital to rule out multiple sclerosis. Exhibit 4, Wexford 000260-263.

In summary, Plaintiff's primary care providers made eight requests for off-site specialty care and treatment to Wexford. The only requests approved prior to his admission to the hospital in 2012 were physical therapy and a Physiatrist consultation.

Shortly after Plaintiff's transfer to the hospital, Plaintiff was diagnosed with a meningioma, located at the foramen magnum[4]:

> A meningioma is a tumor that arises from the meninges — the membranes that surround your brain and spinal cord. Most

---
[4] The opening in the skull through which the spinal cord passes to become the medulla oblongata. http://www.merriam-webster.com/dictionary/foramen%20magnum

> meningiomas are noncancerous (benign), though rarely a meningioma may be cancerous (malignant). Some meningiomas are classified as atypical, meaning they're neither benign nor malignant but, rather, something in between. Meningiomas occur most commonly in older women. But a meningioma can occur in males and at any age, including childhood. A meningioma doesn't always require immediate treatment. A meningioma that causes no significant signs and symptoms may be monitored over time.

See http://www.mayoclinic.org/diseases-conditions/meningioma/basics/definition/con-20026098. Plaintiff underwent surgical removal of the meningioma at the University of Maryland Medical Center. His meningioma was found to be benign. A small piece could not be removed from an artery, but is stable as demonstrated on subsequent MRI examinations.

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court shall grante summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but ...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Rd. of Tr., Craven Cmty. Coll,* 55 F.3d 943, 951 (4th Cir. 1995). The mere existence of a scintilla of evidence in support of a plaintiff's case is insufficient; there must be evidence on which a jury can reasonably find for the non-moving party. *Anderson,* 477 U.S. at 252.

**Analysis**

**42 U.S.C. §1983**

To sustain a cause of action for a § 1983 claim based on improper medical care, a plaintiff must demonstrate "deliberate indifference to [his or her] serious medical needs." *Smith v. Carpenter,* 316 F.3d 178, 183 (2d Cir. 2003) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)). Deliberate indifference to a serious medical need is defined as "treatment [that is] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). "Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action." *Taylor v. Barnett,* 105 F. Supp. 2d 483, 487 (ED. Va. 2000) (citing *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985)).

The deliberate indifference standard incorporates both objective and subjective elements, *Walker v, Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002); *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995). The objective component is satisfied by demonstrating that the plaintiff has a "serious medical condition." *Davis v. Williamson,* 208 F. Supp.2d 631, 633 (N.D.W.V. 2002). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation *only* if those needs are 'serious.'" *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)) (*emphasis added*).

The subjective component is satisfied by showing deliberate indifference by prison officials. *Wilson v. Seiter,* 501 U.S. 294, 303 (1991). Accordingly, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v, Speigal,* 118 F.3d 1416, 1423 (10th Cir. 1997). In short, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). A prison

official is not liable, however, if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998) (no deliberate indifference where doctors knew of symptoms of a tumor, received complaints from inmate about those symptoms, and failed to diagnose the tumor, but inmate produced no evidence that doctors knew about the tumor itself and deliberately failed to treat it). Moreover, absent subjective knowledge, a prison official is not liable even if *"the risk was obvious and a reasonable official would have noticed it." Farmer,* 511 U.S. at 847 (*emphasis added*). In keeping with this test, it is clear that, to sustain a cause of action for a § 1983 claim, a plaintiff must demonstrate that: (a) the plaintiff has a serious medical need; *see Hudson,* 503 U.S. at 9; (b) the defendant personally participated in the alleged deprivation; *see Howell v. Tanner,* 650 F.2d 610, *615 (5th* Cir. 1981); and (c) the defendant knowingly disregarded a "substantial risk of serious harm" to the plaintiff . *See Farmer,* 511 U.S. at 837.

In determining whether a prisoner has received adequate medical treatment, a court is entitled to rely on the medical records kept in the ordinary course of operation. *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D. N.C. 1981), *aff'd.* 676 F.2d 690 (4th Cir. 1982). When it appears from the entire record that the prison medical authorities have made a *sincere* and *reasonable* effort to handle Claimant's medical problems, Claimant's constitutional rights have *not* been violated. *Id.* at 87. (*emphasis added*).

In this case, Corizon and its providers examined and treated Plaintiff frequently throughout 2011, and sought specialty care on his behalf several times. There was no deliberate indifferent. The record demonstrates a sincere and reasonable effort to address Plaintiff's

medical problems. Plaintiff's constitution rights have not been violated, and Defendants Corizon, Dr. Siddiqui and Dr. Ottey are entitled to judgment as a matter of law.

**Respondeat Superior**

The principles of respondeat superior have no application to §1983 actions. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d. 611 (1978). This holding applies to private entities. *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348 (4th Cir. 2003) ("A private corporation is not liable under § 1983 for torts committed by special police officers when such liability is predicated solely upon a theory of respondeat superior." *Rodriguez* at 355). "Rather, private corporations can only be held liable under § 1983 if 'an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" *Id.*

Plaintiff's constitutional rights have not been violated as stated herein. Further, Plaintiff has proffered no evidence of an official policy or custom of Corizon that caused the alleged deprivation of his federal rights. Accordingly, Corizon is entitled judgment as a matter of law.

**Medical Negligence**

To state a claim upon which relief can be granted, Plaintiff must demonstrate a duty owed to him, a breach of that duty by defendants, and injury caused by proximately caused by the breach of duty. *Dunham v. Elder*, 18 Md. App. 360, 306 A.2d 568 (1973). The duty owed is ordinary medical care and skill. *Shilkret v. Annapolis Emergency Hosp. Ass'n*, 276 Md. 187, 349 A.2d 245 (1979).

Corizon, Dr. Siddiqui and Dr. Ottey did not breach any duty to Plaintiff. Primary health care was provided to him within the standard of care. Plaintiff needed specialty care and such care was sought on at least eight occasions. Wexford declined all specialty care requests that

would have resulted in a diagnosis of Plaintiff's condition.  There is no dispute of these facts, and Defendants are entitled to judgment as a matter of law.

**Injunctive Relief**

Plaintiff seeks injunctive relief, but has failed to meet his burden of proof.  The Plaintiff must satisfy objective and subjective factors.  For the objective factor, the Court required "to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36; 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

"The subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct, their attitudes and conduct at the time suit is brought and persisting thereafter. "*Farmer v. Brennan*, 511 U.S. 825, 845, -47; 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Plaintiff must have evidence "from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Farmer*, 511 U.S. at 846.  He must also "demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Id*.

A district court should approach issuance of injunctive orders with the usual caution and avoid becoming enmeshed in the minutiae of prison operations.  The Court may exercise its discretion if appropriate by giving prison officials time to rectify the situation before issuing an injunction. *Farmer*, 511 U.S. at 846-7.

Plaintiff's claim for injunctive relief fails on the objective and subjective requirements. He has presented no evidence of any action that violates contemporary standards of decency or that society chooses not to tolerate. On the subjective element, the actions of the Defendants do not rise to deliberate indifference at the time the Complaint was filed. Plaintiff has no evidence of a continued disregard of a risk of harm to him or inmates generally. Plaintiff is not entitled to extraordinary remedy of injunctive relief.

**Conclusion**

For the reasons stated herein, Defendants are entitled to the entry of judgment in their favor.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**


  _/s/ Jennifer E. Cameron_
Jennifer E. Cameron
Michelle J. Marzullo
600 Baltimore Avenue, Suite 305
Towson, MD 21204
(410) 339-6880
*Attorneys for Defendants
Corizon, Inc., Noor Siddiqui, M.D., and
Colin Ottey, M.D.*

{MD088927.1}